Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

# UNITED STATES DISTRICT COURT

### for the

Montana District of Montana

Helena Division

Cody J. Flesch

_Plaintiff(s)_

(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)

-v-

KIMBERLY MALCOMB - F.S.M.
TRAVIS JONES - SGT.
IAN HUNT - R·D·

_Defendant(s)_

(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names. Do not include addresses here.)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. _____

_(to be filled in by the Clerk's Office)_

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

## I.   The Parties to This Complaint

### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name — Cody J V Flesch

All other names by which you have been known: — X

ID Number — 3004653

Current Institution — Montana State Prison

Address — 700 Conley Lake Rd
Deer Lodge     MT     59722
*City*          *State*          *Zip Code*

### B.   The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

Name — Kimberly Malcomb

Job or Title *(if known)* — Food Service Manager

Shield Number — X

Employer — Montana State Prison - D.O.C.

Address — 700 Conley Lake Rd
Deer Lodge     MT     59722
*City*          *State*          *Zip Code*

☒ Individual capacity   ☒ Official capacity

Defendant No. 2

Name — Travis Jones

Job or Title *(if known)* — Kitchen Sergeant

Shield Number — X

Employer — Montana State Prison - D.O.C.

Address — 700 Conley Lake Rd
Deer Lodge     MT     59722
*City*          *State*          *Zip Code*

☒ Individual capacity   ☐ Official capacity

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

Defendant No. 3

Name ___ Ray Hunt ___

Job or Title *(if known)* ___ Registered Dietition ___

Shield Number ___ X ___

Employer ___ Montana State prison - D.O.C. ___

Address ___ 700 Conley Lake RD ___

___ Deerlodge     MT     59722 ___

City         State         Zip Code

☒ Individual capacity    ☒ Official capacity

Defendant No. 4

Name ___

Job or Title *(if known)* ___

Shield Number ___

Employer ___

Address ___

___

City         State         Zip Code

☐ Individual capacity    ☐ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☒ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?
RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT
FREE EXERCISE OF RELIGION PROTECTIVE UNDER THE FIRST AMENDMENT OF THE U.S CONSTITITION
CRUEL AND UNUSUAL PUNISHMENT PROTECTIONS UNDER THE EIGHTH AMENDMENT OF THE U.S CONSTITUTION
FREE FROM RETALIATION FOR PROTECTED CONDUCT UNDER THE FIRST AMENDMENT OF THE U.S CONSTITUTION
DUE PROCESS CLAUSE, CONDITIONS OF CONFINEMENT. OF THE FOURTEENTH AMENDMENT OF THE ___
U.S. CONSTITUTION

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

X _____

D.    Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

DEFENDANT KIMBERLY MALCOMB AT ALL TIMES RELEVANT WAS EMPLOYED BY THE MONTANA STATE PRISON AS THE HEAD ?COOK?FREEZER FOOD SERVICE MANAGER. IN THAT CAPACITY AND UNDER COLOR OF STATE LAW ALLOWED PLAINTIFF'S RELIGIOUS (KOSHER/HALAL) AND MEDICAL (NO ONION/NO TO-) DIET MEALS TO BE CONTAMINATED WITH KNOWN ALLERGINS - TOMATOES/ONION' - ,ROTTEN FOOD, SPIT, PORK, AND NON-KOSHER/HALAL FOODS. HER DEL-IBERATE INDIFFERENCE TO THIS DAILY OCCURANCE FORCED PLAINTIFF, OVER AN EIGHT MONTH PERIOD, TO CHOOSE TO ACCEPT FOOD HE COULD NOT EAT DUE TO AL-LERGIES, SPOILED, OR HAD SPIT IN GO HUNGRY AND/OR BREAK HIS RELIGIOUS SCRUPLES BY NOT EATING IN ACCORDANCE WITH HIS ISLAMIC BELIEFS IN OR-DER TO EAT. UNDER MALCOMB'S DIRECT SUPERVISION RARELY HAD ANY SORT OF CORRECTIVE MEAL OR REPLACEMENT SENT TO RHU WHERE PLAINTI-FF WAS HOUSED. THESE DELIBERATE ACTS AND OMISSIONS OF HER DUTY PLACED A SUBSTANTIAL ... CONT' EX 1

## III.    Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☐    Pretrial detainee

☐    Civilly committed detainee

☐    Immigration detainee

☒    Convicted and sentenced state prisoner

☐    Convicted and sentenced federal prisoner

☐    Other *(explain)* _____

## IV.    Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    If the events giving rise to your claim arose outside an institution, describe where and when they arose.

X _____

B.    If the events giving rise to your claim arose in an institution, describe where and when they arose.

_8/22/23 To date (4/8/24): High Side Food Service (High dining)_
_8/22/25, To date (4/8/24): Restrictive Housing Unit_
_? To date (4/8/24): MCE Food Factory_____
ge, mt    All located at the Montana State Prison - 700 Conley Lake RD, Deer Lod

Page 4 of 11

<u>EX. 1</u>

burden on plaintiff's free exercise of his religion and subjected plaintiff to cruel and unusual punishment in denying one of life's basic necessities of an adequate and nutritional diet.

Upon being put on notice that plaintiff's religious and medical diet trays were being tampered with and prepared in a deficient manner she was repeatedly approached by numerous MSP supervisors that she was failing to supervise her inmate workers in the high side kitchen, which she manages. She was further put on notice by informal resolutions, grievances, and subsequent appeals filed by plaintiff. In retaliation for the above stated, voiced and made it clear to the inmate workers under her direct supervision that it would be condoned and blind eye turned to the deficient and contaminated diet trays being sent to plaintiff in RHU. Even calling plaintiff a "cry baby muslim". This was done and her continued "inspection" and continued approval after her "inspections" after her being placed on notice can not be viewed as anything but retaliation in direct response with her direct actions/words to plaintiff's endeavor to exercise his first amendment right to eat in accordance with the dietary laws of Islam, his first amendment right to file complaints about his medical and religious diet tray deficiencies. These actions under color of state law and as the high side kitchen manager chilled those above stated and constitutionaly protected rights and conduct.

<u>Defendant Travis Jones</u> at all times relevant, was employed by the Montana State Prison as a high side kitchen supervisor and high side kitchen Sergeant. In that capacity and under color of state law allowed plaintiff's religious diet and medical diet trays (kosher - no tomatoes - no onions) to be delivered to plaintiff while plaintiff was housed in Restrictive Housing Unit (RHU) contaminated with tomatoes and onions, rotten food, raw food, spit, pork, and non-kosher/halal foods. His deliberate indifference to this daily occurrence forced plaintiff to (over an (8) month period for his religious diet and (9) month period for his medical diet) choose to accept food he could not eat due to allergins, rotten, spoiled, or w/ spit; go hungry; or break the dietary laws of his religious beliefs (Islam). This daily occurance was told to kitchen staff through kites and complaints from plaintiff, phone calls by MSP security staff, emails, and over the radio under which SGT. Jones had direct supervision. SGT Jones rarely had replacement or substitutions sent to RHU to ensure plaintiff was receiving nutrition.

1 of 3

adequate food for the day.

These omission in his duty placed a substantial burden on his free exercise of his religion and subjected plaintiff to cruel and unusual punishment from sgt. Jore apparent inspection and approval of such deficient religous/medical diet trays once prepared.

Defendant Ray Hunt at all times relevant was was employed by the Montana State Prison as the Registered Dietition. In that capacity and under color of state law refused to take corrective actions to to ensure a nutritionaly adequate special diet menu in accordance with plaintiff's medical and religious needs. Defendant made a specialized "no tomatoe, no onion, kosher menu" that was never enforced or followed by kitchen staff under his direct supervision inspite of numerous kites written by plaintiff, informal resolutions, grievances, and subsequent appeals written b plaintiff, emails; phonecalls; and radio calls made by RHU security staff, and direct instruction by msp supervisiors such as CPT. Jovanavich, Warden Salmonsen, and other msp rank and file. Multiple times Hunt has even taken direct action of "inspecting meals" prepared for plaintiff (or atleast claimed to have), and personally approved the trays that were missing portions and having contaminates of onions, tomateos, and raw/spoiled food on Feb. 19 and Feb 20, 2024. He then attempted to blame RHU security staff in tampering with the trays to avoid accepting responsibility in approving deficiently prepared meals for plaintiff, via response to a kite written by plaintiff.

Had the menu prepared by Hunt been followed, it still was nutritionaly inadequate. All Hunt did in preparing this "specialized diet" or plaintiff was eliminate the mre box meals and spanish omlette which all had the allergins tomateo and onion (but were also at least half the nutrition of every meal) from the menu w/ no substitution to replace the eliminated boxed meals/spanish omlette. The deliberate action of preparing a deficient diet menu subjected plaintiff to half the amount of food the other inmates in the prison.

Over the past (8) months (for kosher) and (19) months (for medical diet) Hunt was aware of the daily issues. His intentional actions and intentional inaction subjected plaintiff to cruel and unusual punishment, depriving someone (plaintiff) of one of life's basic necessities, a nutritionally adequate menu - sustainable food for a

2 of 3

(30) year old male who works out on a regular regular basis.

To make a deficient menu, not taking corrective action in regards to the contaminated food being inspected by Defendant's Jones and Malcomb and approved by them was deliberate. Hunt was deliberately indifferent to his duty to ensure inmates receive adequate menus and meals. This placing a substantial burden on plaintiff's free exercise of his religion in regards to the dietary laws of his Islamic beliefs by forcing plaintiff to eat unlawful foods just to not go hungry offered by R HU security staff and/or to avoid eating contaminated food's.



3 of 3

EX. 2

Plaintiff arrived at Montana State Prison on 9/15/22. Immediately upon intake he informed staff of his need of a medical diet due to allergies to onions and tomateos, Shortly there after it was confirmed by Ray Hunt and approved. Plaintiff then started to receive this medical diet. From that day (exact date unknown at this time) a consistant occurance began that resulted in trays not being sent to Restrictive Housing Unit (RHU) for plaintiff that was free of alergins, food that was planned for plaintiff that clearly stated "no onions - no tomateos - Flesch - RHU" but clearly contained onions and tomateos, and where certin foods containing allergins being removed from the trays with nu replacement or substitutions. This resulted in many days of plaintiff not being given more than a tray or two a day. This occurance led to a practice by plaintiff of making a disturbance that led to two options to RHU staff, 1-) go through the protocal of calling command post, calling the extraction team to deal with plaintiff's disturbance, write-ups for plaintiff, clean up what ever mess this extraction would cause, and write incedent reports. or 2-) Go scrounge up scraps of food they had sitting around in the food area in ● the back of RHU so plaintiff had some kind of food to eat for that day. The latter was the more common result but both options resulted one way or the other almost daily.

In 2023 plaintiff was approved and accomodated by RAC (religious Activity Center) coordinator Terry Stefalo. From 3/23/23 to 4/22/23 plaintiff fasted in accordance with the dietary laws of his Islamic beliefs. Plaintiff's meals were brought to him every night. By this time of the day no kitchen staff were still at the prison to replace or correct any mistake made during the preparation of these meals. On a daily basis plaintiff's meals were inadequate, contaminated w/ allergins, rotten, raw, had spit, trash, and some times empty trays. This force d RHU security staff SGT. Jones (RHU SGT. Jones not Defendant Jones), SGT. Sallie, SGT. Paull, SGT. Leighton, and SGT. Shaney to stop their supervisory duties in managing RHU to either deal w/ plaintiff's disturbance or to personally reach out to command post or personaly go to the closed high side kitchen to attempt to get adequate and non-contaminated food for plaintiff or go to the back food area to scrounge up allergine free food for plaintiff to eat. Some times, there wasn't anything to eat to offer plaintiff and he'd end up having to eat a single tray ● or two after fasting the whole day w/ no food or water and then fast the following day w/ no food or water. Sometimes plaintiff would break down and eat during the day, breaking the dietary laws of Islam while fasting for the month of Ramadan. RHU secur-

1 of 12)

ity staff and plaintiff both made daily complaints on these issues, which prompted LT. F-ranks (RHU manager) among other ranking MSP staff (command post - staff sergeants, lieutenants, and captains specific names unknown at this time) to contact food service (ie Defendants) w/ corrective instruction or inquiry into the cause of the issue. Despite these daily actions by MSP security staff it only seem to increase the level of deficiencies/ tampering of food, contaminates, and virtually a complete stop in kitchen staff's already infrequent replacement of unacceptable food. Every day of Ramadan in 2023 was this an issue.

During Ramadan of 2023 plaintiff also reached out to Defendant Hunt (Hunt) w/ the intent to be placed on a Halal diet w/ requests/advice on previous accomodations in other facilities plaintiff had done time in that made the preparation easiest for all concerned.

On 3/22/23 plaintiff was approved and placed on a "Kosher" diet. Even though Kosher isn't for Muslims it's functionaly adequate and also made lawful in the Quran. Up to this point the above detailed issues with plaintiff's no onions/tomateo diet were still a daily occurance in the same circumstance.

~~[scribbled out text]~~ (CF)

at lunch and dinner

Every Kosher meal contains an omlette at breakfast and a MRE Kosher box. These consist of (400) calories and (20) grams of protene. They all also consist of tomateos and onions as ingrediants. Thus Half the meal. For months, every single day, every single meal these were sent w/ plaintiff's meal despite the above detailed complaints by plaintiff and attempted corrective action by MSP security staff. Not only that, but plaintiff diet trays also came w/ rotten food, onions hidden in food, raw eggs, spoiled tuna, tuna and fruit mixed together then heated up, trays intentionaly opened and left loose in the paperbag, numerous black trays that were regular ~~[scribbled]~~ trays w/ clearly visible chunks of onions and tomateos, and clearly non-Kosher ~~[scribbled]~~ foods. This is a daily issue to date (8 month) ~~[scribbled]~~. The above detailed result and response was still the eventuality above. But now plaintiff is ~~[scribbled]~~ faced w/ not only breaking the dietary laws of his religion, but also ● eating foods he's allergic to and going hungry. This also making a hostile living enviroment for ~~[scribbled]~~ plaintiff and RHU security floor staff over the constant, consistant, unnecessary, and time consuming issue of kitchen staff refusing

2 or 12.

take to corrective action in their duty as kitchen supervisors.

Between 3/11/24 and 4/10/24 plaintiff participated in fasting during the month of Ramadan. Like detailed above, the same problems plaintiff had to face during the prior (8) months, in respect to his "kosher" diet, the prior (19) months in respect to his medical diet "no onion and no tomateo", and during Ramadan the year prior. The continued inaction placing plaintiff's health in jeopardy on almost a daily basis. This risk amplified during Ramadan due to 1-) when a mistake was made, a contaminate found in the food food ~~missing~~ missing, spoiled, raw, or tampered w/ this wouldn't be discovered until 4:00pm, well after kitchen staff left for the day, thus forcing plaintiff to either break the dietary laws of his Islamic beliefs and accept the non kosher food R&U security staff was able to scrounge up from the left overs in the back or ~~food~~ 2) plaintiff would have to go without for another (24) hours until sundown the next day ~~due to~~ the fact that plaintiff can't eat or drink anything while the sun is out.

Plaintiff has been very consistant and persistant in insisting and demanding to be fed adequatly in accordance w/ his medical and religious needs. To date plaintiff has ~~never~~ never been removed from kosher diet or taken off the accomadation for Ramadan for any sort of abuse.

Through out the past (19) months numerous inmates have worked in the Nightside kitchen. Some special diet cooks, some other posisitions. While working in the kitchen they ~~observed~~ observed Defendant Malcomb make derogatory remarks about plaintiff's ~~persistance~~ persistance in only accepting allergin free and kosher foods. To date (4) inmates have come forward w/ stories and admissions of witnessing or partaking in the willful tampering w/ plaintiff's diet trays in one respect or the other. Or the open approval or open willful ignorance by malcomb. At the time of this complaint being ~~filed~~ filed (4) statments have or are being written and will be produced in their entirerty through discovery.

~~Ranking~~ Ranking officers who have in one form or another had to deal with and attempt to remedy the situation are: LT. Franks (currently captain at MSP at the moment)



LT. Beltazar, LT. Olhausen, LT. Brown, LT. Sharkey, CPT. Jovanivich, CPT Thompson SGT. Leighton, SGT. Jones, SGT. Holland, SGT. Shupert, ~~██~~, SGT. Shine, SGT. Spoon, SGT. Clark, SGT. Goodie, SGT. Atteson, SGT. Coughlin, SGT. Powll, ~~██~~ ~~██~~ SGT. Sharkey, SGT. Sallie, and Warden Salmisen

MSP security staff that have had to deal w/ the above deprivations in one form or another: %Ware, %Coughlin, %Huge, %Gangie, %Crudsby, %Waltman, %Johnson, %Carpenter, %Railey, %Wilson, %Jackson, %Haldaway, %smith,% Walker, %Bost

Grievance Coordinators Bonnie Swanson and Lisa Wirth

## Religious Free Exercise chim

Plaintiff is a muslim. Plaintiff sent Def-Hunt a kite (4) months prior to accually and officialy requesting a Halal diet, conveying his intent to do so as well as stating his medical diet needs. As a muslim plaintiff attempts to adhere to the dietary laws of Islam, Eating what is made lawful in the revelations through the last prophet muhammad (peace be upon him) in the Quran and attempt to avoid what is prohibited in the same revelation in the Quran. Plaintiff initiated this by requesting and subsequently being approved and placed on a "Kosher diet". Muslims at MSP are placed on "Kosher diet" upon request instead of "Halal d-iet" due to a "Kosher diet" being functionally adequate as well as made lawful in the Quran. This is the initial procedure in regards to religious diets at MSP. Requests to be accomadated in fasting during the Holy Month of Ramadan is accomadated upon request by muslims at MSP. These procedures/accomodations are implimented in acknowldgment of the clearly established right to do so, which is to be, in relevant part, fed a nutrituraly adequate diet in accord-ance w/ one's sincerly held religious beliefs and the dietary laws of that inmates religion.

For Ramadan in 2023 and 2024 Defendants placed a substantial bur-den on plaintiff's right to fast during the Holy month of Ramadan safely and accordingly by allowing food meals to be sent to plaintiff containing contaminates in the form of allergins - tomateo and onions - rotten food, raw food, and tampeded w/ food (ie spit) during Ramadan of both years. In additional to that, Ramadan in 2024 when plaintiff had been on an approved Kosher diet allowed pork and non-Kosher foods sent in the Ramadan sacks that RHU staff hold untill the appropriate time at night and then give to muslim inmates participating in Ramadan that year. These bags remain sealed and stapled.

4.9.12

shot to ensure the food inspected and approved by highside kitchen supervisors (Defendant's) has not been tampered w/ from the time of inspection and it reaching the inmate's door. By this time no MSP kitchen staff are at the prison, so when food is missing, tampered with, rotten, raw, containing pork, or allergins; plaintiff must refuse to accept the unacceptable food container (black tray). Sence kitchen staff are not at MSP at this time no replacement or substitution can be sent. This results in having to go (24) hours before he can break his fast or he's reduced to eating food that isn't kosher provided by RHU staff or eat during the next day - both breaking the dietary laws pertaining to eating lawfully set forth in the Quran and breaking dietary laws pertaining to fasting during Ramadan.

Def. Hunt is directly responsible for not making a nutritionaly adequate menu for inmate workers to follow or ensure and enforce such menu. Hunt was also fully aware of the on going daily food issues and the above detailed results and how plaintiff is forced on a daily basis to violate the dietary laws of Islam. Defendants Jones and Malcomb are directly responsible for the above stated issues by allowing such deficient food to be sent to plaintiff. This placing a substantial burden on plaintiff's free exercise of his religion. Daily Jones and Malcomb's duty to supervise inmate workers during food preparation of special diets for inmates in RHU and inspecting the diet trays after being made but before sent to RHU were deliberately neglected. Their willful ignorance and intentional approval of deficient, inadequate, spoiled, contaminated, and non-kosher foods (2024 Ramadan) placed a substantial burden on plaintiff's endeaver to correctly participate in Ramadan.

Over the past (8) months, the same food issues detailed above, the direct involvement and direct responsibility incurred by the defendants all have had (and currently still) forcing the plaintiff (who is on an approved kosher diet due to his sincerly held beliefs) to break the dietary laws of his Islamic beliefs by means of having to accept non-kosher foods daily from RHU staff when they're able to find food to offer plaintiff in the back o room in RHU that are free of allergins.

No alternative means need be considered. The inital means available by MSP would have been sufficent, but all three defendants deliberate refusal to their duty as kitchen supervisors set forth in MSP policy, has and is still causing the unnecessary and prolonged substanial burden on plaintiff's protected rights to practice his religion. Not budgetary costs

was

inderstaffing, available food, atypical or non unique circumstances. The failure to correct was intentional and their refusal to substitute other food plaintiff could eat was intentional, and the driving force behind these inactions was malice.

Nor can any legitamate penological intrest be logicly or in good faith be conveyed to justify the above restraint and substantal burden put on plaintiff's clearly established constitutional right to practice his religion by eating in accordance with the dietary laws of Islam. To even attempt to do it is essentianally condoning the act of not feeding inmates.

## 8th and 14th Amendment conditions of confinement claims / Due Process

On a daily basis for the past (19) months food is sent to plaintiff w/ allergins, rotten food, spoiled food, overtly small portions, raw eggs, uncooked foods, pork containing foods, food intentionally prepared in a disgusting manner such as tuna that's gore bad & cooked/mixed w/ peaches, slimey brown salad and brown vegges-tables, spoiled tuna, food stinking of tuna w/ no tuna in the trays, onions hidd-en in food, completely empty trays, trays left open in a paper sack that by the time it got to plaintiff it was all loose falling out of the holes of the bag, plaint-iff once handed sgt. Jones a RIU a chicken breast pack that was covered in spit. blended food w/ such a stench that neither floor officer or plaintiff could even make a guess of what it was, brown salad mixed w/ a bunch of pineapple juice and pineapples, fruit servings that consisted of one or two pineapple chunks or 4 or 5 peach cubes, sourkrout as a main course even though it's condiment, brown tinted sweet potatoes (that are supposed to be orange) w/ a scent of dog breath. Kosher menu at msp has a 1/2 of all meals containing of an MRE box or spanish omlette from an outside vender and all these box meals and spanish omlettes have enumer-ated ingredients on the out side of the packaging and all have ingredients w/ onions and tomatoes, regular trays w/ potateo salad, sweet potateo salad, taco mix, scram-bled eggs mixed w/ onions & peppers, among other foods, all clearly containing onions and tomatoes are placed in a paper sack and stapled shut by highside kitchen aft-er approval by defendants once stapled shut in big black letters written in a sh-arpee saying "NO ONIONS NO TOMATEOS. FLESCH RTU" despite the above

6 of 17.

detailed foods.

This isn't isolated incedents or a couple of similar incedents over a long period of time, but rather almost a daily occurance. All three defendants were put on notice and had a complete understanding of the on going deficiencies of food being sent to plaintiff in RHU. Despite this knowlege and despite their knowlege that it is an inmate's clearly established right to be given safe and nutritionaly sufficient food, it's clearly stated in MSP policy as to their duty as kitchen supervisors - MSP Policy 4.3.4 (A)(A)(1) "Authorized staff will ... (b) supervise the preparation of all special unit meals ... (e) adequatly search each individual meal tray before distribution". MSP's own policy clearly conveys the duties of Defendant Jones and Malcomb to inspect every meal sent to the units. To allow inadequate meals w/ the above listed issues to be sent and over the length of time this was allowed to happen - (19) months for the medical diet and (8) months of the religious diet - shows an ongoing and consistant issue shows intent, deliberateness, willful ignorance, and willful omission in their duty/job description of ensuring and providing a safe, sanitary, and nutrihonally sufficent and healthy food is sent to inmates in special housing conveys and ▓▓▓▓▓ establishes, Jones and Malcomb's deliberate indifference to such deprivations in providing one of life's basic necessities, safe & adequate food.

Defendant Hunt has know about plaintiff's medical diet needs for over (13) years and plaintiff sent Hunt a kite (4) months before offically requesting and being approved for his kosher diet informing Hunt of his intent to do so, and highlighting his medical need and giving suggestions in relation.

MSP policy 4.3.2 (A)(A) General Requirements (1.) The facility administrator, or designee, will establish a daily food allowance which satisfies basic nutrition standards and ensure the facility provides offenders three daily meals, except for special weekend and holiday brunch meals or other food service options authorized by the administrator to provide variety or to accommodate other activities

(2.) The facility administrator, or ● designee, will implement and maintain operational procedures that ensure the following: (a) designated staff plan menus in advance considering food appearance, palatability, texture, temperature, proportioning, and appropriate food nutrient content and shall follow

menu plans whenever possible; (b) designated staff ~~xxxxxxxx~~ make available for review all recipes and menus, including special diets, at least once a week in advance and document that any substitutions in the meals served will be of equal nutritional value; (c) special therapeutic and religious diet needs are met and conform as closely a possible to the food served to other offenders;

(B) Special Diets (1) A registered dietition must approve and document special diets. (2) Appropriate medical personel will prescribe therapeutic in response to actual and documented medical need in accordance with the following: (b) therapeutic diet exceptions must be specific and complete, furnished in writing to the food service director (FSD)...

(3) Religious diets are ~~xxxxxxx~~ provided to offenders whose religious beliefs require close adherence to religious dietary laws and will be approved by the religious activities program director on a case by case basis. The religious activities director must provide requests monthly and in writing with specific and complete details to the FSD

These msp policy's clearly convey the duty (in relevant part) to Hunt's responsibility to make a nutritionaly adequate menu in regards to all inmate menus w/ther special diet or regular menu, Hunt disregarded his duty ~~xxxxxxxx~~ and prepared a deficient menu for plaintiff's special diet by only removing the rice box's and spanish omlette's containing onions and tomatoes which consisted of half of each meal w/no replacement or substitutions for the removed foods from the ~~xxxxx~~ kosher diet. Hunt made no effort, or corrective measures taken, twards establishing a nutritionaly sufficient menu or that plaintiff recieved adequate food given the circumstances and consistant refusal to take corrective action by Jones and Malcomb's refusal to ensure adequate food was sent to plaintiff.

The simple fact that it's clearly established by law, msp ~~xxxx~~ policy and every medical publication, or simple common scence, that in order for a human being to sustain life in a healthy manner, (in any setting or environment, food is essential and a necessity of life ~~xxx~~ and in order to sustain that life ~~xxxxxx~~ healthly one needs ~~xx~~ to be given ~~x~~ a nutritionaly ~~xxxxxxx~~ a adequate food. The actions ~~xxx~~ inaction of all three defendants (not prepareing ~~xxxxxx~~ a menu, inspecting/approving ~~xxxxxxxxx~~ unacceptable diet trays before sending them to plantiff in RHU, the verbal comments by malcomb condoning that she didn't care if the "cry baby muslim" ever got fed or got the correct food. There's no justification that can be art-

2 of 12

iculated by any of the defendants in allowing this to happen over a (19) month period of time. Nor any penological governmental intrest be put forth in an legitamate and honest way to feed inmates nutritionaly sufficient meals in accordance w/ medical and religious standards (within reason) is duty bound upon the defendants per federal law down to MSP policy. The procedure and expectation are clearly set forth in MSP policy and all three defendant's job discriptions are paramount in their duty. No alternative means exists that was open to plaintiff in his endeavor to eat non contaminated foods. No strain on any sort of budgetary, resource or staffing wise could have had any impact that defendants could assert to justify their deprivations of plaintiff's rights and their failure in their duty to feed plaintiff accordingly. Like stated above, there's no alternative to preparing nutritionaly adequate food for any inmate or to supervise inmate workers in the preparation of meals the inspection of prepared meals, and approval of prepared meals prior to sending completed trays to RHU. Especially coupled w/ the fact defendants have been consistantly placed on notice by MSP security staff and plaintiff in the midsts of their actions/inaction, and even further coupled w/ the comments made by Malcomb regarding plaintiff and his meals in the face of MSP supervisors giving the defendants corrective directives that were disregarded by defendants. Textbook deliberate indifference.

Nutritionaly adequate food is one of life's necessities and a basic human need. All three defendants had personal and relevant involvement in plaintiff's being deprived of this necessity was and still is a consistant, ongoing, and deliberate on all fronts. Hunt knew of his duty to ensure a sufficient diet menu for plaintiff was prepared and implemented. Instead he cut corners which led to half of every meal being removed and not substituted. That failure can't be characterized anything but deliberate indifference. Defendants Jones and Malcomb both have supervised the kitchen on highside for a appreciable amount of time and are no stranger to the responsibilities of their posistion. Ignorance isn't at play here. They both knew of the issues pertaining to the plaintiff's diet trays and both intentionaly allowed this issue to persist inspite of that knowledge. This wasn't an isolated incedent or a small cluster of incedents over a period of time. This was/is a daily occurance, sometimes 2 or 3 times in a single day. Not only did they refuse to take any corrective action, they refused to send replacement food after being notified by RHU security staff of their failure in inspecting and approval of unacceptable diet trays. This all

9 of 12

is deliberate indifference. The risk to plaintiff's health was known and intentionally disregarded depriving plaintiff of one of the minimal civilized measures of life's necessities.

## Retaliation Claim

Due to the almost daily complaints by plaintiff in the form of kites, informal resolutions, grievances and appeals; emails, phonecalls, and calls over the radio by RHU security staff; corrective directives and inquiry by ranking MSP officers such as the sergeants, lieutenants, captains and Warden Salmensen about defendant's, specifically defendant Malcomb's failures in supervising her inmate workers as well as her failures in inspections/approvals of clearly unacceptable meals being sent to RHU for the plaintiff, and the flack she caught over a (22) day hunger strike plaintiff did in protest of the deficiencies in his food trays led to Malcomb's retaliation against plaintiff for his endeavors to fast during Ramadan in 2023 and 2024, eat adequate diet trays, and to file complaints free of fear of retaliation.

Defendant Malcomb created a custom and practice of allowing plaintiff's diet trays to be tampered w/, prepared w/ rotten and raw food, contaminated w/ allergins, skimped portions, pork containing foods, and non-kosher food. She did this by ~~voicing~~ her anger by telling kitchen inmate workers how she didn't care if plaintiff ever got fed as one rolled her eyes and stormed to her office. Called plaintiff a "crybaby muslim". Voiced how she wouldn't do anything to inmates who continued to prepare plaintiff's food in an unacceptable manner and displayed this by her continous approval after inspection of the non-kosher and contaminated, raw, rotten, and under proportions of food she allowed to be sent to RHU for plaintiff. This increased as time went, and became more frequent and raised in the level of intentionally messed w/ food plaintiff was receiving.

Malcomb's assertions, words, and willful ignorance/blindness in allowing the diet trays to continue to be sent to RHU coupled with the gradual increase of this happening as complaints by plaintiff and RHU security staff continued, the numerous different ways Malcomb was put on notice detailed above, and the simple fact the buck stopped with her and she was well aware. The simple inference that the problems never stopped (hasn't stopped) ~~and~~ for (19) months was done to spite the plaintiff for his complaints while he ~~constantly~~ attempted to practice his religion and eat healthy non contaminated food was hindered/chilled by Malcomb and other kitchen staff under her supervision. This all could have been avoided, her liability in the deprivations

10 of 12

imposed on plaintiff (one would think), if once her supervisors ~~xxxxx~~ contacted her over plaintiff's complaints and after her looking into the issue and took (or atleast, attempted to take) corrective action to ensure the problems were fixed (which they weren't). Rather ~~xxxxxx~~ sh voiced her displeasure and acted on vindictiveness twards these complaints, ~~and~~ her action or/and omission there of was her retaliatory actions twards plaintiff w/ the intent to cause harm and or burden and chill the rights plaintiff was trying to enjoy in regards to practicing his religion and eating safe and adequate ~~foods~~, and exercising his right to file grievance complaints when these rights were hindered.

would have been non-existant

Defendant Malcomb's adverse action twards plaintiff was the omission of corrective action in regards to plaintiff's prolonged denial of safe ediable food. This wasn't an oversight, lack of training, lack of knowldge, out the scope of her supervisory expectation, or due to outside of her control factors. She intentionaly inspected and approved meals almost on a daily basis that she knew wasn't going to be able to be eaten by plaintiff. She voiced her distein twards the radio calls from RHU staff for correct meals for plaintiff. She verbally condoned to fualty preparation of plaintiff's diet trays. She conveyed after calling plaintiff a "cry baby muslim" and articulated more than once that she didn't care about if plaintiff's food was correct or not. This was in direct response to plaintiff's written complaints via kite, informal resolutions, grievances, appeals, hunger strike in protest, msp ranking official from RHU Sergeants all the way up to msp Warden. Plaintiff conduct that was/is protected ~~xxxx~~ is this right to practice his religion, in regards to religious diet, in a safe and nutritionaly adequate ~~xxxxx~~ way, the constitutionally protected right to eat food in a safe nutritionally adequate way in general, and when plaintiff was, denied those things he attempted to file complaints in hopes of getting the problem fixed. Once these protected actions/ conduct were done, or attempted, the issues complained about increased in severity and any sort remedal action became virtually non existant. This done at the direction of the person who had the authority to correct it but rather furthered it, Defendant Malcomb. This has chilled the plaintiff's right to ~~xxxx~~ adhere to the dietary laws of Islam by forcing plaintiff to accept and eat foods that go against those dietary laws because Defendants allow non-kosher foods to consistantly and on a daily basis be sent to RHU for plaintiff and that forcing RHU security staff to scrounge up non-allergin contaminated ~~food~~ scraps and left overs from the back of the unit for plaintiff to eat so he is

11 of 12

atleast getting something to eat. It's also chilling plaintiff's right to practice his religion in regards to fasting during the month of Ramadan, putting plaintiff health at risk due to the above detailed deprivations coupled w/ plaintiff having to deal w/ these issues after not eating or drinking water during the day. This has also forced plaintiff to break the dietary laws of his Islamic beliefs by not only having to eat non-kosher foods offered by RHU security staff once the deficient food is discovered, but also forcing plaintiff to eat and drink during the day sometimes during Ramadan due to Malcomb's retaliations against plaintiff. Malcomb's retaliate against plaintiff in no way, shape, or form could be attributed to the advancement of any sort of legitimate correctional goal.

12 of 12

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

C.   What date and approximate time did the events giving rise to your claim(s) occur?

Every day
8/22/23 through 4-8-24 (Day complaint was filled out)
and still continuing

D.   What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

See Ex. 2

## V.   Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Being deprived of the right to practice ones religion _Being forced to break the dietary laws of plaintiff's Islamic beliefs_ _Forced to break the dietary laws pertaing to Ramadan for the years of 2023 and 2024_ _In protest to the prolonged burden placed on plaintiff in practicing his religion he went on A(22) day hunger strike _When forced to cause disturbances to get fed plaintiff has been written up, spent months on disciplinary detention, and been fined_ _Lost weight that at times have had plaintiff up to (20) pounds under his normal weight_ _Anxiety attacks _Plaintiff has had to refused to take his anti-phyotic medication due to the pills making him physically sick _His stomach to the point of dry heaving :more frequent side effects from taking his medication on an empty stomach such as: dry mouth cause sleeping, viredsuess, agitation, restlessness, muscel tension/cramps, and cluched muscels and jaw _Hunger pains_ _Exposed to the risks to his health by not being fed adequatly_Exposed to the risk of breaking out in hives n ashes if tomatoes were eaten as well as throate swelling if onions were eaten.___

## VI.   Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

_Issue Declaratory judgment stating:_
_1. _Defendant Malcomb's failure to ensure safe and nutritionaly adequate diet trays were prepared, inspected, and approved befor being sent to plaintiff violated the plaintiff's rights under the eighth amendment to the united states constitution _and refusal to ensur safe and nutritional religious diet was prepared inspected and approved was sent to plaintiff violated the rights under free exercise cla the first amendment to the united states constitution and the R.L.U.I.P.A. of 2000 _and by retaliating against plaintiff tiff for filing grievances on such a burden placed on him & by intentionaly allowing and condoning such deprivations to continue _and further retaliated against pla
_2. _Defendant Jones' failure to ensure safe and nutritionaly adequate diet trays were prepared, inspected, and approved before being so s plaintiff violated the plaintiff's rights under the eighth amendment to the united states constitution _the refusal to ensure a safe no nutritional religious diet was prepared, inspected, and approved before being sent to plaintiff violated the gihts under the free exercise clause of the first amendment to the united states constitution and the R.L.U.I.P.A. of 2000.
_3. _Defendant Hunt' failure to prepare & implement, and ensure its was followed and ensure ensure these special diet trays were safe av dequate and inspected and approved before being sent to plaintiff violated plaintiff's rights under the eighth amendment to the u tates constitution _refusal to ensure a safe and nutitual menu was prepared for plaintiff and implemented and refused to ensur aintiff's meals were inspected and approved before being sent to plaintiff violated the rights under the free exercise clause of the 1st amendment to the united states constitution and the R.L.U.I.P.A. of 2000.___

_Damages:
_1. Award punitive damages against all three defendants joivily/severally___
_2. Award nominal damages against all three defendants joivily/severally___
_3. Award presumed/general damages against all three defendants joivily/severally___
_ Grant such other relief as it may appear that plaintiff is entitled to._____

**VII.    Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☒ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

Montance State Prison

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☒ Yes

☐ No

☐ Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☒ Yes

☐ No

☐ Do not know

If yes, which claim(s)?

All

Religious Freedom ~~of Confinement~~ Retaliation, Conditions
of Confinement

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☒ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☐ No

E.    If you did file a grievance:

1.    Where did you file the grievance?

Montana State Prison

2.    What did you claim in your grievance?

food was being tampered with, food went against religious belief and medical diet, wasn't being fed properly, and was being subjected to a substantial burden to practicing religion.

~~[redacted]~~

3.    What was the result, if any?

MSP security staff ordered different prepared foods from a out side vender and moved diet preparation area to another area (at l ot what ~~[illegible]~~ plaintiff has been told) to date little has changed

4.    What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

progressed through all four levels of the MSP grievance system thus exhausting my administrative remedies

Page 7 of 11

F.   If you did not file a grievance:

1.   If there are any reasons why you did not file a grievance, state them here:

X _____

2.   If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

X _____

G.   Please set forth any additional information that is relevant to the exhaustion of your administrative remedies. As of 2/19/2024 all relevant issue' were exhausted, but in addition in regards to plaintiff's food is sues, (15) informals have been filed and sence exhaustion ~

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.   Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☒ Yes

☐ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

united states district court, district of Montana, Helena Davision on 5-1-23

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

A.   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☒ No

B.   If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below.  *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit

Plaintiff(s)

Defendant(s)

2.   Court *(if federal court, name the district; if state court, name the county and State)*

3.   Docket or index number

4.   Name of Judge assigned to your case

5.   Approximate date of filing lawsuit

6.   Is the case still pending?

☐ Yes

☐ No

If no, give the approximate date of disposition.

7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

C.   Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

Page 9 of 11

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

☒ Yes

☐ No

D.   If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

See EX. 3

1.   Parties to the previous lawsuit

Plaintiff(s)   Jody J.V Flesch

Defendant(s)   SGT. Millard

2.   Court *(if federal court, name the district; if state court, name the county and State)*

united states district court for the district of montana, billings divison

3.   Docket or index number

CV 22-127-BLG-SPW-TJC

4.   Name of Judge assigned to your case

Honorable Susan P. Watters

5.   Approximate date of filing lawsuit

*unknown at this time*

6.   Is the case still pending?

☐ Yes

☒ No

If no, give the approximate date of disposition   9-15-23

7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

settlement and dismissal by plaintiff

EX. 3

#1 Cody J.v Flesch _ Plaintiff
Tanner Lund et. al _ Defendant

#2 United states district court for district of Utah

#3 2:20-CV-212-HCN

#4 Howard C. Nielson. Jr.

#5 march, 3rd, 2020

#6 case isn't pending          Disposition Date 11/5/21

#7 Dismissed for failure to prosecute

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## IX.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    2-10-24

Signature of Plaintiff

Printed Name of Plaintiff    Cody J. V Flesch

Prison Identification #    3004653

Prison Address    700 Conley Lake RD

Deer Lodge      MT      59722

        City      State      Zip Code

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

        City      State      Zip Code

Telephone Number

E-mail Address